IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| Clayton Cherry<br>550 June Lane Apt 301<br>Raleigh, NC 27610<br><br>          Plaintiff,<br><br>      v.<br><br>RATP DEV USA LLC<br>300 Throckmorton Street, Suite 670<br>Fort Worth, TX 76102<br><br>    **Serve also:**<br>    RATP DEV USA LLC<br>    c/o Corporation Service Company<br>    2626 Glenwood Avenue, Suite 550<br>    Raleigh, NC 27608<br><br>    -and-<br><br>TRANSDEV SERVICES, INC.<br>720 E. Butterfield Road, Suite 300<br>Lombard, IL 60148<br><br>    **Serve also:**<br>    TRANSDEV SERVICES, INC.<br>    c/o CT Corporation System<br>    160 Mine Lake Ct. Ste 200<br>    Raleigh, NC 27615-6417<br>              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Clayton Cherry, by and through undersigned counsel, as his Complaint against

Defendants RATP Dev USA, LLC ("RATP Dev") and TransDev Services, Inc. ("TransDev")

(collectively "Defendants"), states and avers the following:

**PARTIES**

1. Cherry is a resident of the city of Raleigh, county of Wake, state of North Carolina.

2. RATP Dev is a foreign corporation that operates a place of business located in Raleigh, North Carolina for the GoRaleigh system.

3. RATP Dev USA LLC was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 2000e-2 *et seq*.

4. RATP Dev USA LLC was at all times hereinafter mentioned, a "person" within the meaning AND/OR was a "person" within the meaning of 29 USC § 203(a).

5. TransDev is a foreign corporation that operated a place of business located in Raleigh, North Carolina for the GoRaleigh system.

6. TransDev was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 2000e-2 *et seq*.

7. TransDev was at all times hereinafter mentioned, a "person" within the meaning of 29 USC § 203(a).

## **JURISDICTION & VENUE**

8. RATP Dev hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over RATP Dev comports with due process.

9. This cause of action arose from or relates to the contracts of RATP Dev with North Carolina residents, thereby conferring specific jurisdiction over RATP Dev.

10. TransDev hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over TransDev comports with due process.

11. This cause of action arose from or relates to the contracts of TransDev with North Carolina residents, thereby conferring specific jurisdiction over TransDev.

2

12. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

13. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Cherry's state law claims because those claims derive from a common nucleus of operative facts.

14. Venue is proper in this District because the wrongs herein alleged occurred in this District.

15. Within 180 days of the conduct alleged below, Cherry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2024-02159 against RATP Dev operating at 300 Throckmorton Street, Suite 670, Fort Worth, TX 76102 // 2626 Glenwood Avenue, Suite 550, Raleigh, NC 7608.

16. Within 180 days of the conduct alleged below, Cherry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2024-02160 against TransDev operating at 4104 Poole Road, Raleigh, NC 27610.

17. On or about February 28, 2025 the EEOC issued and mailed a Notice of Right to Sue letter to Cherry regarding the Charges of Discrimination brought by Cherry against RATP Dev in EEOC Agency Charge No. 433-2024-02159.

18. On or about February 25, 2025 the EEOC issued and mailed a Notice of Right to Sue letter to Cherry regarding the Charges of Discrimination brought by Cherry against TransDev in EEOC Agency Charge No. 433-2024-02160.

19. Cherry received his Right to Sue letters from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which have been attached hereto as Plaintiff's Exhibit A-B.

20. Cherry has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letters.

3

21. Cherry has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

22. Cherry is African American.

23. Cherry worked for the GoRaleigh system starting in approximately May 2018.

24. TransDev operated the section of the GoRaleigh system that Cherry worked for.

25. Cherry is a former employee of TransDev.

26. While working for TransDev, Cherry reported to Fulton Bryant.

27. Bryant is TransDev's General Manager.

28. Bryant had the authority to hire, fire, and discipline employees.

29. Bryant is African American.

30. While working under Bryant, Cherry observed Bryant use various racial slurs.

31. Bryant's racial slurs included saying "I can't stand that n*gger." And "you can't trust n*ggers* like you when you say you didn't do too much [over the weekend]."

32. In or around December, 2022, Cherry reported Bryant's racial slurs to Jackie Carney. ("Cherry's First Report of Discrimination")

33. Carney was a Human Resources Representative for TransDev.

34. Carney is African American.

35. Cherry's First Report of Discrimination reported Bryant's slurs.

36. After Cherry's First Report of Discrimination, Bryant became aware of Cherry's First Report of Discrimination.

37. On or about February 2, 2023, TransDev terminated Cherry's employment.

38. The purported reason for terminating Cherry's employment was for stealing time.

39. Cherry did not steal time from TransDev.

40. Bryant fabricated a reason to terminate Cherry's employment.

41. TransDev terminated Cherry's employment because of his race.

42. TransDev terminated Cherry's employment in retaliation for Cherry's First Report of Discrimination.

43. After terminating Cherry, TransDev replaced Cherry with Robert Satterwhite.

44. Satterwhite is Caucasian.

45. Satterwhite was assigned to the same position as Cherry had been assigned.

46. Satterwhite was given the same job responsibilities as Cherry.

47. Upon information and belief, Satterwhite was equally as qualified as Cherry for the position, but not more qualified.

48. Satterwhite was paid approximately $24,000 more than Cherry was paid.

49. Upon information and belief, TransDev's contractual obligations to the GoRaleigh System ended in or around April, 2023.

50. Upon information and belief, RATP Dev took over TransDev's operation of the GoRaleigh System and was responsible for employment decisions during the transition from TransDev to RATP Dev.

51. On or about June 26, 2023, RATP Dev hired Cherry.

52. RATP Dev officially began running the GoRaleigh System where Cherry had previously worked on or about July 1, 2023.

53. At the time of hire, RATP Dev was unaware of Cherry's First Report of Discrimination.

54. When Cherry began to work for RATP Dev, Cherry was assigned to the same location he had previously worked for TransDev.

5

55. During the interim period, Bryant witnessed Cherry working.

56. After witnessing Cherry working, Bryant instructed Satterwhite and another Caucasian employee to file ethics complaints against RATP Dev for hiring Cherry.

57. After witnessing Cherry working, Bryant reached out to William "Bill" Law. ("TransDev's Post Employment Retaliation")

58. Law is Caucasian.

59. Law is RATP Dev's General Manager.

60. Law had the authority to hire, fire, or discipline employees.

61. In TransDev's Post Employment Retaliation, Bryant requested that Law terminate Cherry's employment.

62. In TransDev's Post Employment Retaliation, Bryant requested that Law terminate Cherry's employment because of Cherry's report of discrimination.

63. Requesting that a subsequent employer terminate a person who reported discrimination because of that protected activity would discourage a reasonable person from reporting discrimination.

64. Law did not investigate TransDev's Post Employment Retaliation.

65. Law accepted TransDev's Post Employment Retaliation.

66. Law rubber stamped TransDev's Post Employment Retaliation.

67. In response to TransDev's Post Employment Retaliation, Law initially removed some of Cherry's job responsibilities, including scheduling.

68. Law did not immediately terminate Cherry's employment.

69. By failing to investigate TransDev's Post Employment Retaliation, and taking adverse action against Cherry, Law adopted Transdev's Post Employment Retaliation.

6

70. After Law did not immediately terminate Cherry's employment, upon information and belief, Bryant had Catherine Worthum keep a close eye on Cherry.

71. Bryant is the Godfather of Worthum's grandchild.

72. Worthum worked for RATP Dev.

73. Worthum is Caucasian.

74. Bryant had Worthum keep a close eye on Cherry to find reasons to have Cherry fired.

75. On or about October 13, 2023, Cherry ordered a Driver Manager, Carlton [Last Name Unknown] ("LNU") at RATP Dev to undergo a random drug test.

76. Carlton LNU is African American.

77. Cherry ordered Carlton LNU to take the drug test in the presence of Jameka Maxwell and Tonya Dupree.

78. Dupree was the assistant General Manager for RATP Dev.

79. Dupree is African American.

80. Dupree had the authority to hire, fire, and discipline employees.

81. Maxwell was Cherry's supervisor.

82. Maxwell is African American.

83. Maxwell had the authority to hire, fire, or discipline employees.

84. Carlton LNU refused the drug test.

85. Cherry asked Maxwell how to handle the refusal.

86. Maxwell stated that she would also refuse to take the random drug test.

87. On or about November 10, 2023 Worthum reported to Bill that Cherry left early from work without authorization.

88. Worthum's report was false.

89. During the time that Worthum's report alleged that Cherry was not at work, Cherry was at his desk.

90. On or about November 14, 2023, Cherry reported both the failure to take the drug test and Maxwell's response to Stacy Winsetta.

91. Winsetta was a Human Resources Representative for RATP Dev.

92. Upon information and belief, Winsetta conveyed Cherry's drug test report to Maxwell and Law.

93. On or about November 15, 2023, Cherry submitted a complaint of race discrimination and retaliation to Law. ("Cherry's Second Report of Discrimination")

94. Cherry's Second Report of Discrimination complained about Worthum's false report being made for discriminatory and retaliatory reasons.

95. Cherry's Second Report of Discrimination complained about Law isolating and avoiding Cherry after Worthum's false report.

96. During Cherry's Second Report of Discrimination, Cherry reminded Law about Bryant's post-employment retaliation.

97. In response to Cherry's Second Report of Discrimination, Law stated that Cherry should remove Law's name from the report and re-send it to RATP Dev's Human Resources Department

98. Approximately one week after Cherry's Second Report of Discrimination, Law and Maxwell placed Cherry on a performance improvement plan.

99. On or about November 27, 2023, Law and Maxwell terminated Cherry's employment for purported policy violations.

100. RATP Dev's purported reason for Cherry's termination is pretext for discrimination.

101. RATP Dev's purported reason for Cherry's termination is pretext for discrimination based on Cherry's race.

102. RATP Dev's purported reason for Cherry's termination is pretext for retaliation.

103. RATP Dev's purported reason for Cherry's termination is pretext for retaliation for Cherry's First Report of Discrimination.

104. RATP Dev's purported reason for Cherry's termination is pretext for retaliation for Cherry's Second Report of Discrimination.

105. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Cherry.

106. Upon information and belief, Cherry's termination of employment, Defendants hired or retained an individual outside of Cherry's protected class to replace Cherry.

107. As a result of Defendant's conduct, Cherry suffered, and will continue to suffer damages.

### COUNT I: <u>RACE DISCRIMINATION IN VIOLATION OF TITLE VII</u>

108. Cherry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

109. Throughout his employment, Cherry was fully competent to perform his essential job duties.

110. RATP Dev USA LLC treated Cherry differently than other similarly situated employees based on his race.

111. On or about November 27, 2023, RATP Dev terminated Cherry without just cause.

112. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

113. TransDev terminated Cherry based on his race.

114. RATP Dev terminated Cherry based on his race.

115. TransDev caused RATP Dev to terminate Cherry based on his race.

9

116. As a direct and proximate result of Defendants' conduct, Cherry has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: <u>RETALIATION IN VIOLATION OF TITLE VII</u>

117. Cherry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. Pursuant to 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

119. In Cherry's First Report of Discrimination, Cherry opposed race discrimination.

120. In Cherry's Second Report of Discrimination, Cherry opposed race discrimination

121. After Cherry complained about race discrimination, Defendants failed to take prompt remedial action following her complaints of race discrimination.

122. Defendants ratified the race discrimination that Cherry suffered.

123. On or about February 2, 2023, TransDev terminated Cherry's employment.

124. On or about November 27, 2023 RATP Dev terminated Cherry's employment.

125. In the alternative, on or about November 27, 2023, TransDev caused RATP Dev to terminate Cherry's employment.

126. Each of Transdev and RATP Dev retaliated against Cherry for his reports of discrimination.

127. In their discriminatory action as alleged above, Defendants acted with malice and reckless indifference to the rights of Cherry, thereby entitling Cherry to an award of punitive damages.

128. As a direct and proximate result of Defendants' conduct, Cherry suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Clayton Cherry demands from Defendants the following:

(a) Issue an order requiring RATP Dev to restore Cherry to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Cherry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Cherry's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*

Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:    (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Clayton Cherry*

## <u>JURY DEMAND</u>

Plaintiff Clayton Cherry demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)